STATE EX REL. JUNIOR ASSOCIATION OF THE MILWAUKEE BAR and others, Respondents, vs. RICE, Appellant.

*April 11—November 8, 1940.*

*Eugene L. McIntyre* of Milwaukee, for the appellant.

For the respondents there was a brief by the *Attorney General, Warren H. Resh,* assistant attorney general, *John C. Doerfer* of West Allis, and *Joseph Doucette,* of Milwaukee, and oral argument by *Mr. Doerfer* and *Mr. Resh.*

A brief *amici curiæ* was filed by *Walter W. Hammond* of Kenosha, *Giles F. Clark* of Milwaukee, *C. H. Crownhart, Jr.,* of Madison, *Michael Levin* of Milwaukee, *Warren H. Resh* of Madison, *John F. Savage* of Milwaukee, *W. Mead Stillman* of Oshkosh, *Sheldon Vance* of Fort Atkinson, and *Francis J. Wilcox* of Eau Claire, constituting the committee of the State Bar Association of Wisconsin on unauthorized practice of the law, and concurred in by *Ralph M. Hoyt* of Milwaukee, president of the Milwaukee Bar Association.

Briefs *amici curiæ* were also filed by *Wolfe & Hart, Joseph A. Padway,* and *Otjen & Otjen,* all of Milwaukee.

NELSON, J. As stated in the foregoing recitation, the facts were stipulated and the adverse examinations of the defendant and one of his former employees, taken before trial, were received in evidence. So many of the facts found by the trial court as are necessary to an understanding of this controversy may be summarized as follows:

The defendant resides in the village of Whitefish Bay. His occupation is that of independent adjuster of casualty claims for various insurance companies. His business is carried on as a partnership, his only partner being Joseph Rice, his father, who does not reside in Wisconsin and who does not take any active part in the affairs of the partnership. Neither the defendant nor his father are licensed to practice law in this state or elsewhere. For more than seven years the defendant advertised and held himself out as being engaged in the business of investigating and adjusting

claims made against insurance companies based on personal injuries or damage to property. The defendant had solicited business from various insurance companies by directing letters to them in an endeavor to interest them in the service rendered by him. He had advertised his business in insurance periodicals and had listed his business in the classified part of telephone directories. He had adjusted many claims made against numerous insurance companies. At times during his adverse examination he referred to such companies as his clients. He is not a regular salaried employee of any insurance company. He maintains, at his own expense, an office at 312 East Wisconsin avenue in the city of Milwaukee. He opens and closes his office at his pleasure, hires and discharges his clerical help and employees, and charges the insurance companies who employ him as an adjuster upon an hourly or fee basis for the services rendered in adjusting each claim. The defendant's customary procedure and practice in investigating, adjusting, and settling a claim arising out of an automobile accident was substantially as follows:

Upon receiving notice from an insurance company, or its agent, of an accident or injury, which notice was generally forwarded in the form of an accident report, the defendant himself, or through his employees, obtained as soon as possible full information regarding the accident, the nature and extent of any resulting injuries to persons and damage to property. If possible, he secured from the insured a written statement of the facts relating to the accident. After ascertaining the facts, he would, in most cases, determine or pass judgment on the question whether the insurance company for which he was investigating was liable. When reporting the facts to the insurance company he frequently recommended and advised the company of his opinion as to its liability or nonliability. Frequently he advised an insurance company to settle or not to settle a claim made against it. Sometimes upon his own initiative, and sometimes upon re-

ceipt of advice from an insurance company, he attempted to negotiate settlements with persons who had been injured or who had suffered damage to property. Upon arriving at a settlement, he sometimes drew a draft on the company and advised it that he had settled the claim. Many small claims made against insurance companies were settled by him upon his being satisfied that his company was liable, or that it would be financially economical to do so. Many small settlements were so made by him without his being specifically directed to so settle but such settlements were undoubtedly made in accordance with the approved customary practice and understanding between the defendant and the company involved. In reporting such settlements he sometimes recited the reasons for making such settlements, such as his belief from the facts that the assured was at fault, or that it was a case of pure liability, or that he had secured legal advice to that effect. As to claims that were relatively large, the defendant, while carrying on negotiations for the claimants, frequently recommended to the insurance companies the limits within which he thought the claim ought to be settled and also gave his opinion as to whether or not there was liability. The defendant reported the amount which a claimant wanted, accompanied by a statement as to the worth of the claim, basing his opinion upon the extent of the injuries disclosed by an examination of the medical reports, and the possibility of defeating recovery if suit were brought. The defendant had in his possession three forms of release which had been furnished to him by some of the insurance companies for whom he acted. When a settlement had been agreed upon he selected the proper form, filled in the blank spaces, and then had it signed by the claimant. The defendant at times during settlement negotiations with a claimant, stated his opinion as to liability, as to the possibility of recovery or defeat of recovery in case action were brought, and at such times stated to

claimants the legal basis for his opinion and that certain statutes or rules of law governed the claims. The following typical reasons were occasionally stated in such negotiations: The "father was negligent and the father cannot be sued by the minor;" the claimant "made a left turn without giving the proper signal;" the claimant "failed to keep a proper lookout;" the claimant "failed to yield the right of way;" the claimant "failed to have his car under control" or "failed to stop at the arterial;" the claimant "should take less because he could not recover the amount if he started a law suit;" or "because the driver was the agent of the claimant," or because the claimant was "guilty of contributory negligence," or because the claimant "was negligent as to speed," "did not cross at the marked crosswalk" or that "the accident was unavoidable as a result of an emergency not created by the assured."

Up to and including the year 1936, the defendant at times appeared before justices of the peace for the purpose of having comparatively small settlements with minors approved by them. The defendant frequently, at the direction of an insurance company for whom he was acting, made claim against another insurance company for contribution. Generally a contribution settlement was sought upon a fifty-fifty basis. In attempting to negotiate contribution settlements, the defendant at times had the advice of his own attorney and at other times acted upon his own knowledge or resources. For such services he claimed and was paid compensation by the companies for whom he was acting. The defendant at times had dictated and entered into stipulations between those asserting claims under the Workmen's Compensation Act against one whose compensation risk was carried by an insurance company. The defendant was and is licensed as a layman and authorized by the industrial commission to appear before it in pursuance of sec. 102.17 (1) (am), Stats. Sometimes claims were settled by

insurance companies upon defendant's recommendation notwithstanding the fact that the companies felt that if the cases were tried they could win, but it appears that such settlements were sometimes desired by the local agents of the insurance companies. The defendant had, at times, adjusted claims based upon the safe-place statute after being advised by an attorney in his employ or by an independent attorney. The defendant was, from 1932 to 1937, a subscriber to the advance sheets of the North Western Reporter. He attempted to acquaint himself with "what is going on," particularly in reported cases relating to the liability of insurance companies. The defendant had in his office a copy of the 1929 statutes and the 1931 and 1933 volumes of the session laws. On one occasion he had represented that the Wisconsin legislature had enacted a certain law in which they might be interested. On some occasions the defendant had advised an insurance company in respect to decisions of this court. Such information was given at the direction of an attorney employed by the defendant, either on a regular salary basis or for the specific purpose of advising in regard to a particular claim. About thirty-five per cent of the claims referred to him were settled or adjusted by him; about fifteen per cent of the claims he declined or refused to settle; and in about fifty per cent of the accident reports referred to him no claims were ever asserted.

The judgment ordered the defendant to cease and desist from doing the several acts hereinbefore recited, which the court concluded constituted the practice of law.

The trial court, in its written opinion, referred to the decision theretofore rendered in *Liberty Mutual Ins. Co. v. Boyle G. Clark,* general chairman of the bar committees of the state of Missouri (unreported), in which it was decided by the trial court, which consisted of the regular judge of the circuit court for Boone county, and two other circuit judges sitting as "advisory judges," that lay advisers who

were regular employees of several insurance companies, licensed to do business in the state of Missouri, in pursuing the service for their employer of adjusting claims, were engaged in the unauthorized practice of law. A majority of the three judges held that the following activities constituted the practice of law:

"Adjustment and settlement of claims against said companies' insured and negotiations with claimants with respect thereto.

"Selection and preparation of releases, covenants not to sue and contracts or agreements for the settlement or compromise of claims against the companies' insured, and other like documents affecting secular rights.

"Advising such companies or their insured of their, or his, legal rights.

"Appearance before the Workmen's Compensation Commission of Missouri, together with the presentation of legal rights therein, at formal or informal hearings before such commission or one of said commission.

"Determination of whether or not said companies' particular contract covers a particular casualty of the insured.

"Determination of legal liabilities to the accident and nature thereof for the company or the insured or both."—

and that the following activities of the lay adjusters did not constitute the practice of law:

"1. Detection, (a) discovering of witnesses and evidence; (b) taking photographs; (c) statements of witnesses and acts of like nature.

"2. Appraisement of damage to physical property where liability is undisputed.

"3. Procuring execution of prepared instruments, where the lay employee exercises no discretion in selection or preparation; in payment or delivery of check; draft or payment of money in discharge of claim.

"4. Determination of or recommendation of amount to be set up as a reserve in various claims."

It appears from the written decision of the trial court that it was strongly influenced by the decision of the Missouri trial court above mentioned. The conclusions and judgment of the Missouri circuit court referred to were overturned and reversed on appeal by the supreme court of the state of Missouri. *Liberty Mut. Ins. Co. v. Jones,* 344 Mo. 932, 130 S. W. (2d) 945, 125 A. L. R. 1149. The opinion in that case was carefully and considerately written, and it is the only case which has been called to our attention or which we have been able to find dealing with the question whether services customarily performed by adjusters for insurance companies constitute the practice of law. It was there held in substance as follows: That when a lay investigator employed by an insurance company investigates for his employer, the facts and circumstances relating to a casualty or claim arising under a policy of casualty insurance issued by his employer and he reports the facts ascertained by him in such investigation to his employer, such acts do not constitute the practice of law or the doing of law business; that when a lay adjuster employed by an insurance company in effecting settlement of a claim arising under a policy of casualty insurance issued by his employer, fills in on a printed form, prepared by counsel for his company, a release to be executed by a claimant, such act of such lay adjuster does not constitute the practice of law or the doing of law business; that when a lay adjuster employed by an insurance company in the negotiation and settlement of a claim arising under a policy of casualty insurance issued by his employer truthfully states to the claimant or claimant's representative what the company's attorney has advised such company as to the liability of the company or its insured upon such claim, this act of such lay adjuster does not constitute the practice of law or the doing of law business, but such lay adjuster should not state or act upon his own opinion as to

the legal rights of the company or claimant; that when a lay investigator or adjuster employed by an insurance company, in his reports to his employer, expresses his opinion as to the extent of the liability of his employer or of the insured upon any claim he is charged with investigating or adjusting, such acts of such lay investigator or adjuster do not constitute the practice of law or the doing of law business; provided he does not pass on any question of law or legal liability; that when a lay investigator or adjuster employed by an insurance company in a report to his employer, states the opinion (if any) given by the company's counsel on any question of liability upon any given claim, such act does not constitute the practice of law or the doing of law business; that when a lay adjuster or lay claims manager of an insurance company determines for his employer the pecuniary limit which his employer will be willing to offer or to pay in settlement of any claim arising under a policy of casualty insurance issued by such employer, such act does not constitute the practice of law or the doing of law business, provided he does not determine the legal liability of his employer or his assured, but arrives at his conclusion, either regardless of legal liability or upon the advice of counsel; that when a lay employee of an insurance company exercises his judgment as to which of several forms of releases prepared by counsel for the company he will use in settling a claim arising under a policy of casualty insurance issued by such company, such act by such lay employee does not constitute the practice of law or the doing of law business.

The very gist of the holding in that case, which was by a unanimous court and with which we agree, is that a lay adjuster regularly employed by an insurance company may fully investigate the facts involved in any casualty, including property damage and personal injuries, and may report such facts to his employer, together with such comments as are necessary to inform his employer of important and

relevant facts found by him, but that he may not advise his employer as to its rights or legal liability, and may not advise a claimant as to his rights although he may communicate to his employer, the opinion of the company's attorney as to its rights or liability and may truthfully communicate to a claimant, the opinion of the company's counsel or the opinion of the company's local attorney.

The defendant makes two principal contentions,—(1) that the legislature has by sec. 203.24 (1), Stats., authorized and approved the licensing of laymen as adjusters. Sec. 203.24 (1) provides:

"No person, except an agent holding a certificate of authority under section 209.04, shall make any adjustment of loss under an insurance policy covering hazards described in subsections (1), (2), (11), (12), (14) and (15), of section 201.04, unless he shall hold a certificate under this section."

The language "and (15)" was added to sec. 203.24, Stats., by ch. 235, Laws of 1937. Sec. 201.04 (15) provides:

"201.04 *Purposes; classification.* An insurance corporation may be formed for the following purposes: . . . "(15) Automobile insurance.—Against loss, expense and liability resulting from the ownership, maintenance or use of any automobile, aircraft or other vehicle."

It thus appears that the legislature clearly intended to authorize certificate-holder adjusters to make adjustment of losses under an insurance policy covering automobile hazards, but there is nothing in sec. 203.24, Stats., or in the history of that statute as it was enacted into its present form, to indicate that the legislature had any intention of authorizing adjusters to engage in the practice of law. See ch. 316, Laws of 1913; ch. 29, Laws of 1915; secs. 15 and 16, ch. 425, Laws of 1919; ch. 235, Laws of 1937. To

read into that section which does not define "adjustment of loss" a right to practice law would be without warrant and would render that statute in conflict with sec. 256.30 (2), Stats. 1937, which provides:

"Every person who shall appear as agent, representative or attorney, for or on behalf of any other person, or any firm, copartnership, association or corporation in any action or proceeding in or before any court of record, court commissioner, or judicial tribunal of the United States, or of any state, *or who shall otherwise, in or out of court for compensation or pecuniary reward give professional legal advice not incidental to his usual or ordinary business, or render any legal service for any other person,* or any firm, copartnership, association or corporation, shall be deemed to be practicing law within the meaning of this section."

We think it clear that the legislature by enacting sec. 203.24 (1), Stats., did not intend to authorize adjusters to do those things which clearly constitute "legal service" or the practice of law.

(2) The defendant further contends that the legislature in sec. 256.30 (2), Stats., has declared what constitutes the practice of law, and that none of the things found by the trial court to be the practice of law constitute such practice because everything that the court found that he did was incidental to his usual or ordinary business of adjusting losses for insurance companies and therefore may not be said to be the practice of law. In our opinion, the contention is unsound for the reason that a lay person may not engage in a business which involves the rendering of "legal service" and then claim immunity because the giving of professional legal advice was incidental to his usual or ordinary business. Giving legal advice under such circumstances violates the express provision of sec. 256.30 (2), which provides:

"Or render any legal service for any other person, or any firm, copartnership, association or corporation. . . ."

We need not presently consider whether the legislature in enacting sec. 256.30 (2), Stats., unconstitutionally trespassed upon the judicial department which, according to a number of decisions, has exclusive power to define what is the practice of law. *Rhode Island Bar Asso. v. Automobile Service Asso.* 55 R. I. 122, 179 Atl. 139, 100 A. L. R. 226; *People ex rel. The Illinois State Bar Asso. v. People's Stockyards State Bank,* 344 Ill. 462, 176 N. E. 901; *Meunier v. Bernich* (La. App.), 170 So. 567.

A number of courts hold that similar statutes are properly enacted under the police power and are in aid of the judicial power vested in the courts. It has been said that although the courts have the inherent or implied power finally to decide and determine what constitutes the practice of the law, there is no occasion for the exercise of that power provided a statute passed by the legislature is constitutional and applicable and in no way frustrates or interferes with judicial functioning. *Liberty Mutual Ins. Co. v. Jones, supra.*

It has been held by courts that it is difficult, if not impossible, to lay down an all-inclusive definition of practice of law. *Matter of Shoe Mfgrs. Protective Asso.* 295 Mass. 369, 3 N. E. (2d) 746; *Rhode Island Bar Asso. v. Automobile Service Asso., supra; Creditors' Service Corp. v. Cummings,* 57 R. I. 291, 190 Atl. 2.

A number of courts have from time to time, in deciding a given case, attempted to define practice of law, but the general trend of judicial decision is to determine each case of unauthorized practice of law largely upon its own particular facts. *Matter of Shoe Mfgrs. Protective Asso., supra; Creditors' Service Corp. v. Cummings, supra.*

We conclude that a lay person may engage in the business of adjusting losses for insurance companies if licensed so to do; that he may hold himself out as engaged in such business by writing to insurance companies and informing them that he is engaged in such business; that he may list his

business in the classified section of telephone directories and in insurance papers or journals; that in pursuing such business when employed by an insurance company he may fully investigate the facts of any loss, either himself or through his employees, obtain written statements, photographs, and may appraise a loss or damages to property or damages resulting from personal injuries, and if authorized or so instructed by his employer he may obtain reports or estimates of losses or damage to property or the extent of personal injuries from experts in a particular field, such as building contractors, garagemen, or physicians; that he may report all such facts so obtained to his employer, and may comment on the facts found; that he may not advise his employer as to its liability or nonliability or render advice to a claimant. Giving advice as to legal rights is clearly the function of lawyers. Rendering legal advice for compensation as a customary practice is held to be practicing law under all of the authorities (Brand, Unauthorized Practice Decisions); and such activities on the part of a layman constitute the practice of law by him. An adjuster may communicate to his employer an opinion obtained from an attorney, and may communicate to a claimant an opinion, or the truthful substance of it, rendered by counsel for his employer, or that of a local attorney employed by the defendant, but he may not communicate an opinion of an attorney as his own.

In the interest of clarity, we shall discuss specifically the provisions of the judgment which ordered the defendant to cease and desist from doing certain things: (1) Appearing in a representative capacity before a justice of the peace. It is conceded by the defendant that so appearing was improper. However, that practice was discontinued by the defendant in 1936, so there is no contention that that part of the judgment should not stand;

(2) Advising or recommending that an insurance company settle a claim asserted against it for any amount or sums;

(3) Advising or recommending that an insurance company refuse or reject a claim asserted against it;

(4) Advising or recommending to others, including insurance companies, of their rights or duties toward insurance companies or third persons; and

(5) Advising or recommending that insurance companies have subrogation or contribution claims against other insurance companies.

All of those orders involve the giving of advice and, in our opinion, clearly constitute the practice of law, and such orders, in our opinion, should stand.

(6) Negotiating settlements or adjustments for or on behalf of insurance companies with others in a representative capacity.

We are of the opinion that lay persons, lay adjusters, regularly employed, or lay independent adjusters employed by an insurance company to adjust losses may properly ascertain the facts and negotiate settlements or adjustments on behalf of insurance companies. We perceive no impropriety in an insurance company authorizing its lay adjuster to settle small claims or claims generally regarded by insurance companies as uneconomical to contest, such as "nuisance claims," without the specific approval of the company's counsel or its local attorney. If an insurance company, in the interest of economical management or administration, sees fit to inaugurate and maintain such a policy with respect to small claims we do not consider that the practice of law is involved in such settlements.

(7) "Engaging in the practice of being an intermediary between an attorney and third persons."

Just what the court sought to restrain is not entirely clear unless that order was intended to apply to a situation where the defendant employed an attorney on his staff and communicated to his employer as his own the opinion given him by his employee attorney between whom and the in-

surance company there was no relationship of attorney and client. If so, that order is proper and should stand.

(8) "Advising or offering to advise and construing the rights of insurance companies, claimants or third persons of their respective rights arising out of or by reason of a contract of liability, casualty, fire or indemnity insurance existing between any insurance company and another."

This order, in our opinion, should stand because it involves the giving of advice, the offering to give advice and the passing upon liability or nonliability under insurance policies.

(9) Selecting and preparing "releases, covenants not to sue, contracts or agreements for the settlement or compromise of claims, against insurance companies or other similar agreements for or on behalf of insurance companies or third persons. (This does not apply to procuring execution of prepared instruments, where defendant exercises no discretion in selection or preparation or to payment by delivery of check, draft or payment of money in discharge of claim.)"

In *Liberty Mut. Ins. Co. v. Jones, supra,* it was held that if in effecting a settlement of a claim arising under a policy of casualty insurance an adjuster fills in the blank spaces of a printed form prepared by counsel for the company, such act does not constitute the practice of law. We are in accord with that conclusion and so hold in this case. It appears that the defendant had in his possession three forms of releases furnished by the insurance companies who employed him, which releases were presumably drawn by their counsel. We consider that as an adjuster he had a right to select from his files the proper form applicable to the claim settled, fill out the blank spaces in accordance with the settlement agreement, and have the claimant sign the same. We consider, however, that so much of the order as restrains the defendant from himself preparing contracts or agreements for the

settlement or compromise of claims made against the insurance companies employing him should stand.

*By the Court.*—Judgment affirmed in part and reversed in part. Cause remanded with directions to enter judgment in accordance with the opinion. No costs allowed to either party.