STATE of Wisconsin EX REL. Hon. James P.
FIEDLER, Circuit Judge, J. Denis Moran, Director of
State Courts, and Richard J. Podell, Petitioners,

v.

The WISCONSIN SENATE and its President,
Senator Fred A. Risser, The Wisconsin Assembly and
its speaker, Representative Thomas A. Loftus, Hon.
Donald Hanaway, Attorney General, Respondents.

Supreme Court

*No. 89-0773-OA. Argued January 25, 1990.—Decided May 10,
1990.*

(Also reported in 454 N.W.2d 770.)

94

96

For the petitioners there were briefs by *Irvin B. Charne* and *Thomas M. Williams* and *Charne, Glassner, Tehan, Clancy & Taitelman, S.C.,* Milwaukee and oral argument by *Irvin B. Charne.*

For the respondents the cause was argued by *Stephen W. Kleinmaier,* assistant attorney general, with

whom on the brief was *Donald J. Hanaway,* attorney general.

WILLIAM A. BABLITCH, J. This is an original action challenging the constitutionality of sec. 757.48(1)(a), Stats., as amended by 1987 Wis. Act 355, which imposes a continuing legal education requirement on attorneys prior to their appointment as guardians ad litem. We conclude that sec. 757.48(1)(a), as amended, improperly intrudes on a regulation of the practice of law that is exclusively within the province of the judiciary. Accordingly, we hold the statute void as an unconstitutional violation of the separation of powers doctrine.

The facts are stipulated. On April 14, 1987, Assembly Amendment 1 to 1987 Assembly Bill 205 was offered in the legislature. The amendment included a provision that read: "In order to be appointed as a guardian ad litem under s. 767.045, an attorney shall have completed three hours of approved continuing legal education relating to the functions and duties of a guardian ad litem under ch. 767." After further amendments in the assembly and senate, the bill was passed by the legislature, signed by the governor, and published as 1987 Wis. Act 355 on May 2, 1988. The bill as enacted appears as sec. 757.48(1)(a), Stats.

Petitioners sought a declaratory ruling on the constitutionality of the enactment, and a petition for leave to commence an original action with a brief in support of the petition were filed with this court on April 21, 1989. On April 26, 1989, the court issued an administrative directive instructing the circuit judges of Wisconsin to refrain from implementing the continuing legal education requirements of sec. 757.48(1)(a), Stats. On the same date, the court ordered a response to the petition, which was filed on May 9, 1989. The respondents stated

98

that they did not oppose the request that the court exercise original jurisdiction. By order of May 10, 1989, this court granted the petition for leave to commence the action.

The petitioners request a judgment declaring sec. 757.48(1)(a), Stats., as amended by 1987 Wisconsin Act 355, unconstitutional under the separation of powers doctrine. The petitioners further contend that the amendment to sec. 757.48(1)(a) is devoid of any standard for implementation and is therefore unconstitutionally vague. Both parties agree this is a proper case for declaratory relief. *State ex rel. Lynch v. Conta,* 71 Wis. 2d 662, 239 N.W.2d 313 (1976).

We conclude that while the legislature may prescribe minimum standards for the eligibility of persons desiring to practice law, it is the province of the judiciary ultimately to decide the fitness of those who practice before it and to regulate their activities following their admission to practice. A concomitant of this authority is the power to decide whether special training for a particular area is appropriate. Because the amendment to sec. 757.48(1)(a), Stats., interferes with this authority, we hold it void under the separation of powers doctrine.

In *State v. Holmes,* 106 Wis. 2d 31, 42, 315 N.W.2d 703 (1982), we discussed the separation of powers doctrine at great length. We stated:

> The Wisconsin constitution creates three separate coordinate branches of government, no branch subordinate to the other, no branch to arrogate to itself control over the other except as is provided by the constitution, and no branch to exercise the power committed by the constitution to another. *Id.* at 42.

We recognized that although the three governmental branches are coordinate and separate, each deriving

its power from the constitution, the constitution does not explicitly define legislative, executive, or judicial power. *Id.* Thus, it is neither possible nor practicable " 'to classify accurately all the various governmental powers and to say that this power belongs exclusively to one department and that power belongs exclusively to another.' " *Id.* at 42–43 (quoting *Integration of Bar Case,* 244 Wis. 8, 45, 11 N.W.2d 604 (1943)).

The separation of powers doctrine therefore does not require an absolute division of power without overlap. Rather, the doctrine envisions a government of separated branches sharing certain powers. *Holmes,* 106 Wis. 2d at 43. Where the legislative and judicial powers overlap, the legislature's power to act in the area of shared authority is not unchecked. The legislature is prohibited from unreasonably burdening or substantially interfering with the judicial branch. *State v. Unnamed Defendant,* 150 Wis. 2d 352, 360, 441 N.W.2d 696 (1989).

However, the separation of powers doctrine does not render every power conferred upon one branch of government a power which may be shared by another branch. There are zones of authority constitutionally established for each branch of government upon which any other branch of government is prohibited from intruding. As to these areas of authority, the unreasonable burden or substantial interference test does not apply: *any* exercise of authority by another branch of government is unconstitutional. *In Matter of Complaint Against Grady,* 118 Wis. 2d 762, 776, 348 N.W.2d 559 (1984).[1]

---

[1]For examples of recognized areas of authority exclusive to the judicial and therefore free from intrusion by another branch

100

The respondents correctly assert that the judiciary and the legislature share authority to prescribe qualifications for admission to the practice of law. The judiciary is concerned with the qualifications of attorneys in the exercise of its inherent power to regulate the bar. *See Holmes*, 106 Wis. 2d at 45, and cases cited at n.11. The legislature is concerned with the qualifications of attorneys pursuant to its power to promote the general welfare. As we stated in *In re Cannon*, 206 Wis. 374, 396, 240 N.W. 441 (1932):

> We think the separation of sovereign power by which the constitution assigns the legislative power to the legislature and the judicial power to the courts, with the purpose of making each department supreme and independent in its respective field, accords to the legislature the power of exacting of those who shall be admitted to the practice of the law such qualifications as the legislature shall deem sufficient to protect the public from the evils and mischiefs resulting from incompetent and characterless attorneys, which qualifications so prescribed must be respected by the courts. The courts cannot and should not license any as attorneys at law who do not

of government, *see, e.g., In re Janitor of Supreme Court*, 35 Wis. 410 (1874) (an attempt to remove and replace a court employee); *In re Court Room*, 148 Wis. 109 (1912) (an attempt to dictate the physical facilities in which a court was to exercise its judicial functions); *Thoe v. Chicago, M. & St. P.R. Co.*, 181 Wis. 456 (1923) (an attempt to legislate what constitutes the legal sufficiency of evidence); *Rules of Court Case*, 204 Wis. 501 (1931) (an attempt to regulate trials in the conduct of court business); *see also*, cases cited in G. Currie & W. Resh, *The Separation of Powers Control of Courts and Lawyers*, 47 Wis. Bar Bull. 7, 11 (Dec. 1974).

possess the qualifications deemed by the legislature necessary for the protection of the public interest.

This language establishes that the legislature may prescribe minimum qualifications for persons desiring to be admitted to practice law in the state as an incident to its general power to protect the public. Once admitted, however, it does not follow that the legislature shares with the judiciary the authority to establish minimum qualifications in specific areas of law.

To the contrary, we made it clear in the subsequent case of *State ex rel. Reynolds v. Dinger,* 14 Wis. 2d 193, 206, 109 N.W.2d 685 (1961), that no rule or practice, however venerable, would preempt the exclusive authority of the judicial branch to define and regulate the activities of those who have been admitted. We stated:

> [T]he regulation of the practice of the law is a judicial power and is vested exclusively in the supreme court; that the practitioner in or out of court, licensed lawyer or layman, is subject to such regulation; that whenever the court's view of the public interest requires it, the court has the power to make appropriate regulations concerning the practice of law in the interest of the administration of justice, and to modify or declare void any such rule, law, or regulation by whomever promulgated, which appears to the court to interfere with the court's control of such practice for such ends.

Furthermore, the competence of an attorney to represent a client in a particular area is at present governed by SCR 20:1.1, which requires competent representation through application of the legal knowledge, skill, thoroughness, and preparation necessary for the

representation. To the extent an attorney fails to meet the level of competence necessary for effective representation, the attorney is subjected to an action for legal malpractice, and to disciplinary action undertaken pursuant to the judiciary's inherent authority to discipline members of the bar. *See Rubin v. State,* 194 Wis. 207, 214-15, 216 N.W. 513 (1927).

The issue of an attorney's competence to practice in a particular area is therefore currently left to the attorney's professional judgment bounded solely by the judiciary's inherent power to regulate the bar. This court has never in the past authorized the legislature to adopt rules or enact legislation attempting to establish a threshold level of competency to practice in a particular area. In fact, this court has specifically prohibited attorneys from holding themselves out as having special expertise in a particular field of law. *See* SCR 20:7.4.

We therefore conclude that once an attorney has been determined to have met the legislative and judicial threshold requirements and is admitted to practice law, he or she is subject to the judiciary's inherent and exclusive authority to regulate the practice of law. A necessary attribute of the court's regulatory authority is the power to determine the quantum of competence necessary to perform legal tasks and the authority to discipline those practitioners who fail to represent their clients competently. *See In re Cannon,* 206 Wis. at 397–98. Because the amendment to sec. 757.48(1)(a), Stats., intrudes upon that area of exclusive authority, it unconstitutionally violates the separation of powers doctrine.

In urging a contrary result, the respondents draw an analogy to the rules governing appointment of private practitioners to serve as public defenders. The respon-

dents argue that before an attorney can be certified, they are required to complete seven hours of continuing legal education each calendar year in courses approved by the state public defender. *See* Wis. Admin. Code, Sec. SPD 1.04(9). Furthermore, the public defender board was created by the legislature under sec. 15.78, Stats., and the board members are appointed by the governor with the advice and consent of the senate, pursuant to sec. 15.07(1). Therefore, the respondents insist that if sec. 757.48(1)(a) is a violation of the separation of powers doctrine, then so too must be the public defender requirements for appointment to represent indigent clients.

 We are unpersuaded. Section SPD 1.04(9) does not constitute an example of the legislature intruding on the discretion of the circuit courts in deciding whom to appoint. The rule relates to attorneys who are eligible to represent indigent clients on behalf of the state public defender. The rule does not purport to prohibit circuit courts from appointing attorneys other than those certified by the state public defender who the court may see fit to serve as the legal representative of an indigent criminal defendant. There is nothing in the implementing legislation to suggest that any attorney licensed to practice could not, if he or she were willing, be appointed to represent an indigent defendant even though the practitioner did not meet the requirement of sec. SPD 1.04(9). Unlike the public defender regulations, the amendment under challenge here intervenes in a court's decision concerning whom to appoint as a guardian ad litem and imposes a standard that displaces the adjudicative function.

Nor does the decision in *Witter v. Cook County Com'rs et. al.,* 100 N.E. 148 (Ill. 1912), support the

respondent's position. That case involved a statute creating the position of probation officer in the juvenile court. The situation is more closely analogous to the Wisconsin public defender rule requiring private attorneys to take certain continuing legal education as a precondition to eligibility for employment. Thus, *Witter* is not authority for the proposition that the legislature may intervene in a court's decision concerning whom to appoint as guardian ad litem.

Finally, the respondents suggest that even if the amendment to sec. 757.48(1)(a), Stats., falls within the court's exclusive authority, the statute is valid as an aid to the court's power, much as the practice of real estate brokers to use legal forms was allowed to continue in *Reynolds v. Dinger,* 14 Wis. 2d at 206. However, unlike the matter before the court in *Reynolds,* this is not a situation where the court is called upon to review a practice that has been engaged in by laypersons, tacitly permitted over a substantial period of time, and determined to function "reasonably well." *Id.* at 206. The amendment to sec. 757.48(1)(a) imposes practical impediments to the court's discharge of its substantive decisionmaking authority, and usurps the uniquely judicial function of determining the qualifications of those seeking to represent a minor litigant's interest. Accordingly, sec. 757.48(1)(a), as amended by 1987 Wis. Act 355, is unconstitutional.

In reaching this conclusion, we do not question the legislature's laudable purpose in establishing a level of competence for persons appointed to serve as guardians ad litem, thereby also promoting efficiency in the adjudication of minors' rights. However, these qualifications can only be established by the judicial branch pursuant

to its authority conferred by Art. VII of the Wisconsin Constitution.

Accordingly, we conclude that it is the province of the judiciary to decide whether special training for a particular area of the law is appropriate. The amendment to sec. 757.48(1)(a), Stats., interferes with this court's power in that regard, and therefore violates the separation of powers. Because of our conclusion in this regard, we need not reach the issue whether sec. 757.48(1)(a) is impermissibly vague.

*By the Court.*—Rights Declared.

SHIRLEY S. ABRAHAMSON, J. (dissenting). Once again this court claims exclusive judicial authority and declares a statute unconstitutional.[1] This court's expanding concept of its own exclusive judicial authority creates the danger of unchecked power in this court. The legislature, bench, bar and public should be concerned.[2]

The issue presented by the case is whether the legislature may impose educational requirements on certain

---

[1] See also *In re Grady,* 118 Wis. 2d 762, 790, 348 N.W.2d 559 (1984).

[2] For a discussion of the dangers of courts' increasingly declaring their exclusive prerogative of regulating lawyers, see Wolfram, *Lawyer Turf and Lawyer Regulation—The Role of the Inherent-Powers Doctrine,* 12 U. Ark. Little Rock L.J. 1 (1989–90). Professor Wolfram (Charles Frank Reavis, Sr., Professor of Law, Cornell Law School) views the judicial exclusivity aspect of the separation of powers doctrine as "a powerful barrier shielding the legal profession from any of its critics who wish to urge legislative reform of the profession."

For a discussion of the relations of the Illinois Supreme Court and Illinois Legislature on the court's claim of exclusive power, see *Chicago Tribune,* May 4, 1990, sec. 1, p. 7.

guardians ad litem. Section 757.48(1)(a), Stats. 1987–88, requires that circuit courts appoint as guardians ad litem for children in actions affecting the family only those attorneys who "have completed three hours of approved continuing legal education related to the functions and duties of a guardian ad litem under ch. 767."[3]

The majority opinion chooses to characterize sec. 757.48(1)(a) as regulating the practice of law and concludes that any statute regulating the practice of law is unconstitutional.

I share the majority's doubts about the wisdom of sec. 757.48(1)(a).[4] Nevertheless I conclude that sec. 757.48(1)(a) is constitutional. A statute is presumed constitutional; the opponents of legislation bear the burden of proving unconstitutionality beyond a reasonable

---

[3]Section 757.48(1)(a), 1987–88, provides:

**Guardian ad litem must be an attorney. (1)** (a) Except as provided in s. 879.23 (4), in all matters in which a guardian ad litem is appointed by the court, the guardian ad litem shall be an attorney admitted to practice in this state. In order to be appointed as a guardian ad litem under s. 767.045, an attorney shall have completed 3 hours of approved continuing legal education relating to the functions and duties of a guardian ad litem under ch. 767.

[4]The Judicial Council filed a petition for rule-making with this court on June 19, 1989, to amend various provisions governing guardians ad litem for minor children. While the Judicial Council did not propose an educational requirement for the guardians ad litem, other persons filed proposals and requested the court to adopt educational requirements for guardians appointed in chapter 48 proceedings. Public Hearing on October 10, 1989. In closed discussion of the proposed rules, the court refused to adopt educational requirements, but gave no reason for its action. Order in the Matter of Rules Pertaining to Guardians ad Litem: Secs. 48.02(9), 48.23(1), (3) and (4), 48.235, 48.41(30), 767.045, 809.85, 813.122(3), 880.33(2)(c) and 880.331, Stats., dated October 26, 1989.

doubt. *In Matter of E.B. v. State,* 111 Wis. 2d 175, 180, 330 N.W.2d 584 (1983). No such showing has been made in this case.

When determining whether a statute is unconstitutional as a usurpation of judicial powers, I believe the court should, following our earlier cases, consider four questions. First, is the subject matter of the statute within the legislature's constitutional charge to promote the general welfare? Second, is the subject matter within the court's constitutional grant of judicial power? Third, is the subject matter properly characterized as falling within the area of powers shared between the legislature and the courts or does the subject matter fall within the court's exclusive authority? Fourth, what is the effect of the statute on the administration of justice?

Although I believe this court may be better qualified than the legislature to deal with the issue of educational requirements for guardians ad litem, this court need not claim exclusive authority or declare the statute unconstitutional to take advantage of its expertise.

I.

The Wisconsin legislature has plenary power to enact legislation for the general welfare. Except for the argument on separation of powers, the parties do not cite any state or federal law that would prevent the legislature from regulating the educational qualifications of guardians ad litem who represent children in an action affecting the family.

I conclude that the legislature clearly acted under its constitutional plenary legislative powers to protect the general welfare.

## II.

No one disputes this court's power to regulate the educational requirements of attorneys who are appointed guardians ad litem to represent children in an action affecting the family. The constitutional grant of judicial power extends beyond the power to decide a particular case. It encompasses those powers necessary for the court to efficiently perform its adjudicatory role. These powers are known as incidental, implied or inherent powers. *State v. Holmes,* 106 Wis. 2d 31, 44, 315 N.W.2d 703 (1981); *In re Cannon,* 206 Wis. 374, 393-95, 240 N.W. 441 (1932); *State v. Cannon,* 199 Wis. 401, 402, 226 N.W. 385 (1929); *State v. Cannon,* 196 Wis. 534, 536-537, 221 N.W. 603 (1928). In the past, the court has exercised its incidental, implied or inherent judicial powers to regulate the court's budget, regulate pleading, practice and procedure, appoint counsel at the public's expense, create a judicial code of ethics, and discipline judges. See *Rules of Court,* 204 Wis. 501, 236 N.W. 717 (1931); *Holmes, supra,* 106 Wis. 2d at 45 n.11 and the cases cited therein; *In Matter of E.B., supra* 111 Wis. 2d at 181-82.

## III.

The majority opinion characterizes sec. 757.48(1)(a) as regulating the practice of law, an area it labels as exclusively within the judiciary's power under the separation of powers doctrine. As I explain later, see Part IV below, the cases do not support the conclusion the majority reaches.

The majority opinion ignores the broader purposes and other possible characterizations of the legislation.

I would characterize sec. 757.48(1)(a) as protecting children in court, protecting families, regulating guardi-

ans ad litem, governing pleading, practice and procedure, and incidentally affecting lawyers. The judiciary does not have the power, exclusive of the legislature, to act in any of the forementioned areas. I therefore conclude that sec. 757.48(1)(a) falls within the powers shared by the legislature and the judiciary.

This court has declared in numerous decisions that the doctrine of separation of powers is not an absolute rule but a working principle of government. The doctrine is applied to maintain the balance of power among the three branches of government, to preserve their respective independence and integrity, and to prevent the concentration of unchecked power in the hands of any one branch. *In Matter of E.B., supra* 111 Wis. 2d 181; *In Matter of Complaint Against Grady,* 118 Wis. 2d 762, 790 n.4, 348 N.W.2d 559 (1984) (Abrahamson, J., concurring).

Relying on the separation of powers doctrine, this court has guarded the judiciary's independence and has been unwilling to sanction any legislative attempt to interfere with the essence of judicial power—a court's ability to decide the merits of a dispute under law, independently, impartially and free from coercion from another branch of government. At the same time the court has been reluctant to draw absolute boundaries between legislative and judicial powers because of the amorphous nature of the separation of powers doctrine. *Davis v. The President and Trustees of the Village of Menasha,* 21 Wis. 497 [*491], 501 [*495] (1867). *In Matter of E.B., supra* 111 Wis. 2d at 181.

The primary sources for interpreting the separation of powers doctrine are the practices before and at the time of the adoption of the constitution and the earliest interpretation of the provision as manifested in the first laws adopted by the legislature. *Rules of the Court,* 204

110

Wis. 501, 505, 236 N.W. 717 (1931); *State v. Beno,* 116 Wis. 2d 122, 136-37, 341 N.W.2d 668 (1984); *State v. Unnamed Defendant,* 150 Wis. 2d 352, 361, 441 N.W.2d 696 (1989) (overruling *State ex rel. Unnamed Petitioners v. Connors,* 136 Wis. 2d 118, 401 N.W.2d 782 (1987)).

History supports my conclusion that sec. 757.48(1)(a) is properly characterized as falling within the area of shared powers. Wisconsin legislative enactments on the subject of children in court and guardians ad litem predate statehood. In 1837, the territorial legislature required courts to appoint guardians ad litem for minors who were parties to litigation. Laws of 1839, p. 160. In 1849 the newly formed state legislature enacted a similar statute. Laws of 1848, ch. 88, sec. 35. In 1887, the legislature required that guardians ad litem be attorneys. See 1887 R.S. ch. 295, sec. 1. See Hohmann and Dwyer, *Guardians ad Litem in Wisconsin,* 48 Marq. L. Rev. 445 (1965).

The legislature's longstanding and continuing involvement in defining when a court should appoint a guardian ad litem and the qualifications and responsibilities of the guardian ad litem justifies concluding that the regulation of guardians ad litem falls within the area of powers shared by the legislature and the courts, not within the exclusive domain of this court.

If a law falls within an area of shared authority, as I believe sec. 757.48(1)(a) does, the law is constitutional unless it unduly burdens or substantially interferes with the judicial branch. *State v. Holmes,* 106 Wis. 2d 31, 42, 68, 315 N.W.2d 703 (1981). Petitioners argue, but never demonstrate with the requisite degree of certainty, that sec. 757.48(1)(a) would place an undue burden on or substantially interfere with the circuit court or this

111

court.[5] The majority opinion fails to consider whether any significant impairment exists.

The legislative requirement that guardians ad litem who represent children in any action affecting the family take three hours of approved continuing legal education credit fits with the court's rules requiring every lawyer to take a prescribed number of credit hours of continuing legal education. SCR ch. 31. The legislative requirement parallels this court's own order requiring lawyers to "attend as part of the continuing legal education requirement of SCR 31.02 three hours of approved continuing legal education credits on the subject of the new Rules of Professional Conduct for Attorneys." Supreme Court Order, In the Matter of the Amendment of Supreme Court Rules: SCR Chapter 20: Code of Professional Responsibility, June 10, 1987, p. 5.[6]

The shared powers approach respects the expertise and institutional ability of both the legislature and the courts. If the court believes sec. 757.48(1)(a) is unsound or can be improved, the court should not declare the statute unconstitutional but should hold a public hearing and amend or suspend the statute pursuant to its rule-making powers under sec. 751.12, Stats. 1987–88.[7]

---

[5]If a circuit court could not find an attorney with the appropriate CLE accreditation, the requirement would obviously give way to the circuit court's inherent power to appoint counsel for the proper administration of justice. *Contempt in State v. Lehman,* 137 Wis. 2d 65, 403 N.W.2d 438 (1987).

[6]Petitioners have also argued that the statute is impermissibly vague. I find this contention without merit on the basis of our own 1987 order requiring continuing legal education credits on the new attorneys' professional conduct code.

[7]Section 751.12, Stats. 1987–88, provides:

**751.12 Rules of pleading and practice.** The state supreme court shall, by rules promulgated by it from time to time, regulate

## IV.

The majority contends that the court possesses the *exclusive* authority to regulate the practice of law to the complete exclusion of the legislature. Our case law provides no support for holding that this court shall, in the absence of legislative interference with the judicial branch, exclusively regulate the practice of law. The court stated in *Integration of Bar Case,* 244 Wis. 8, 50, 11 N.W.2d 604, 12 N.W.2d 689 (1943), "it is quite obvious from a study of the history of the bar and the consideration of judicial decisions that the line of demarcation between the legislative field and the judicial field in mat-

---

pleading, practice and procedure in judicial proceedings in all courts, for the purpose of simplifying the same and of promoting the speedy determination of litigation upon its merits. The rules shall not abridge, enlarge or modify the substantive rights of any litigant. The effective dates for all rules adopted by the court shall be January 1 or July 1. A rule shall not become effective until 60 days after its adoption. All such rules shall be printed by the state printer and paid for out of the state treasury, and the court shall direct the rules to be distributed as it deems proper. All statutes relating to pleading, practice and procedure may be modified or suspended by rules promulgated under this section. No rule modifying or suspending such statutes may be adopted until the court has held a public hearing with reference to the rule. Notice of public hearings shall be given by publication of a class 3 notice, under ch. 985, the expense of the publication to be paid out of the state treasury. Notice shall also be given in an official publication of the state bar of Wisconsin, the notice to be published not more than 60 days nor less than 30 days before the date of hearing. The state bar of Wisconsin shall not charge the state treasury for publication of this notice. Proposed rules, including changes, if any, in existing rules, shall be set forth in full in the notice. This section shall not abridge the right of the legislature to enact, modify or repeal statutes or rules relating to pleading, practice or procedure. The judicial council shall act in an advisory capacity to assist the court in performing its duties under this section.

ters relating to the bar is not a straight line or even a fixed one."

I can find no unified theory in our cases explaining the court's and legislature's spheres of authority in matters relating to admission to the bar, practice of law or disbarment. The court has followed a pragmatic approach to statutes relating to these subjects, seeking to accommodate the legislature's concerns for the general welfare, to defer to reasonable legislative enactments, and to avoid conflict with the legislature. See, *e.g.,* *Application of Lavinia Goodell,* 39 Wis. 232 (1875), 48 Wis. 693, 81 N.W. 551 (1879); *State v. Cannon,* 196 Wis. 534, 221 N.W. 603 (1928); *In re Cannon,* 206 Wis. 374, 240 N.W. 441 (1932); *State ex rel. Junior Assn of Milwaukee Bar v. Rice,* 236 Wis. 38, 53, 294 N.W. 550 (1940); *State ex rel. Reynolds v. Dinger,* 14 Wis. 2d 193, 109 N.W.2d 685 (1960).

The majority opinion contends that *In re Cannon,* 206 Wis. at 396, and *State ex rel. Reynolds v. Dinger,* 14 Wis. 2d at 206, prohibit the legislature from regulating the practice of law. I disagree.

*Cannon*'s reach is significantly more limited than the majority opinion suggests. The *Cannon* court merely held that the legislature may not enact a statute admitting a single individual as a member of the bar, namely Raymond Cannon, whom the court had suspended from practice of law. The court reasoned that the legislature may establish minimum criteria for bar admission so long as the criteria apply generally to all attorneys and do not interfere with the court's power to enact further requirements for admission or to discipline individual attorneys. *Cannon* does not suggest the legislative interest ends with lawyers' admission to the bar.

Similarly, the majority opinion's reliance on *Dinger* is misplaced. In *Dinger,* the court considered whether

the real estate brokers could complete title transfers and real estate documents for their clients or whether these activities constitute the unauthorized practice of law. The court stated in dictum that it has the exclusive power to regulate the practice of law. It also stated, however, that its power did not displace the role of the legislature or an administrative agency to adopt laws and regulations that might affect the legal profession or that aids the court in its constitutional powers affecting the legal profession. *Dinger, supra* 14 Wis. 2d at 203, 206. The *Dinger* court held that the court retains the final power to modify any rule, law, or regulation which interferes with the court's function in the administration of justice.

Even if the court were to determine that the sec. 757.48(1)(a) falls within the exclusive power of the court under the separation of powers doctrine, the statute is not necessarily unconstitutional. When the court has claimed an area as exclusive to the judiciary, the court has turned to principles of comity, recognizing the legislature's power and duty to declare itself on questions relating to the general welfare. This rationale for the judicial policy of comity is set forth in *State v. Holmes*, 106 Wis. 2d at 46 (quoting *Integration of the Bar Case*, 244 Wis. at 52):

> While the legislature has no constitutional power to compel the court to act or, if it acts, to act in a particular way in the discharge of the judicial function, it may nevertheless with propriety, and in the exercise of its power and the discharge of its duty, declare itself upon questions relating to the general welfare . . .. The court, as has been exemplified during the entire history of the state will respect such declaration and, as already indicated, adopt them so

far as they do not embarrass the court or impair its constitutional functions.

Accordingly, this court has consistently held that even if a law falls within the court's exclusive authority, the court will uphold the law if this court accepts it as an aid to the court's power; it is invalid if this court determines that the law thwarts the administration of justice. *State ex rel. Reynolds v. Dinger,* 14 Wis. 2d 193, 109 N.W.2d 685 (1961).

The majority opinion makes no effort to demonstrate that sec. 757.48(1)(a) thwarts the court's authority or the administration of justice. There is nothing in the record to show that sec. 757.48(1)(a) thwarts the administration of justice or impedes or interferes with the administration of justice. I therefore conclude that the statute is constitutional.

## V.

I do not join the majority opinion because it improperly and unwisely closes the people's access to the legislature by characterizing the statute as falling within this court's exclusive powers. Neither the majority opinion nor the cases it cites defines the phrase *practice of law.* For the difficulty of defining what constitutes the practice of law, see *Dinger, supra.* The court arbitrarily claims the power to place vast areas of the law beyond the power of the legislative and executive branches by characterizing a statute as regulating the "practice of law."

As a result of this opinion, the only recourse for those seeking to improve the quality of performance of guardians ad litem who represent children in an action affecting the family is to petition this court to adopt rules. I do not believe the court's rule-making process

should supplant the right of the people to act through their elected representatives.

The court's rule-making procedures are, unfortunately, confusing and shrouded in secrecy. Some rules fall within sec. 751.12, Stats. 1987–88. Others fall within the Supreme Court Rules. Still others fall within the court's Internal Operating Procedures. The procedure for petitioning the court for the different types of rules is not clear. The court holds hearings on some rules, not on others. Hearings are open to the public. The decision-making process on all rules and internal operating procedures is presently closed. In the past the court usually has not explained its adoption of a rule or refusal to adopt a proposed rule. See, *e.g., In re Felony Sentencing Guidelines,* 120 Wis. 2d 198, 216–18, 353 N.W.2d 793 (1984) (Abrahamson, J., dissenting). The public's need for access to this court's decision-making process concerning rules and administrative matters becomes all the more important as the court declares its powers to be exclusive of the legislature.

At times this court must assume exclusive power to ensure the orderly administration of justice. In my opinion, this case is not one of those times. The majority opinion departs from time-honored principles of shared powers between two equal and coordinate branches of government and the spirit of comity. Justice Crownhart's words in 1929 chastising the court for assuming powers are applicable in this case: "The court is the sole judge of its powers, without guide or compass. I would think that this court would not wish [to exercise] arbitrary power, for arbitrary power begets arbitrary use

117

or abuse of power." *State v. Cannon,* 196 Wis. 534 (1929) (Crownhart, J., dissenting).

For the reasons set forth, I dissent.