IN the MATTER OF the BAR ADMISSION OF: Yotvat Adi ALTSHULER.

Supreme Court

*No. 91-2323-BA. Submitted on briefs April 29, 1992.—Decided October 6, 1992.*

(Also reported in 490 N.W.2d 1.)

For the petitioner there was a brief by *Yotvat Adi Altshuler.*

For the respondent the cause was submitted on the brief of *Burneatta L. Bridge,* with whom on the brief was *James E. Doyle,* attorney general.

PER CURIAM. *Review of Board of Bar Examiners decision; decision affirmed.*

This is a review, pursuant to SCR 40.08(5), of the decision of the Board of Bar Examiners (Board) declin-

ing a request to waive the requirement of SCR 40.04(1)[1] that in order to write the Wisconsin bar examination, an applicant seeking bar admission on examination must have been awarded a first professional degree in law from a law school approved by the American Bar Association (ABA). The issues before the Board were whether the applicant's is an exceptional case, whether the applicant showed good cause for waiver of the law degree requirement and whether the Board's refusal to grant a waiver would be unjust under the circumstances. As the decision to grant or deny the requested waiver was within the Board's discretion, we review whether the Board properly exercised that discretion.

We determine that the Board properly exercised the discretion it is given by SCR 40.10[2] to waive the law degree requirement of SCR 40.04(1) in respect to this applicant. Accordingly, we affirm the Board's decision declining to do so.

The applicant, Yotvat Adi Altshuler, filed a petition on May 14, 1991 to write the July, 1991 Wisconsin bar examination in order to pursue admission to the practice of law. At the same time, she sought a waiver of the

---

[1]SCR 40.04(1) provides:

**Legal competence requirement: Bar examination.** (1) An applicant who has been awarded a first professional degree in law from a law school that is fully or provisionally approved by the American bar association at the time of the applicant's graduation shall satisfy the legal competence requirement by presenting to the clerk certification of the board that the applicant has passed an examination administered by the board covering all or part of the subject matter areas of law specified in SCR 40.03(2)(a).

[2]SCR 40.10 provides:

**Waiver of requirements.** Except for the requirements of SCR 40.03 and 40.06(2), the board may waive any of the requirements of this chapter in exceptional cases and for good cause where to do otherwise would be unjust.

requirement that a bar examinee's first professional degree in law have been awarded by an ABA-approved law school. In her letter seeking that waiver, Ms. Altshuler informed the Board that she had been awarded a first professional degree in law from the Tel Aviv University Faculty of Law in Israel. She also stated that she and her husband, a professor at the University of Wisconsin in Madison, intended to settle in Wisconsin and that she wished to continue practicing her profession.

In support of her request for waiver, Ms. Altshuler provided the Board with information concerning the highly acclaimed status of the Tel Aviv Law School and an affidavit from the director of graduate student affairs at the University of Chicago Law School concerning her academic achievement in pursuing LL.M. studies there, which resulted in her being awarded that degree in June, 1991. After the Board notified her of its intention to decline her request for waiver, Ms. Altshuler informed the Board that her final grade point average in her work toward the LL.M. degree placed her in the upper 15 percent of the 1991 J.D. graduating class and that she was selected as a research assistant for Professor Geoffrey P. Miller at the University of Chicago Law School. She also provided letters in support of her application from the Honorable Richard A. Posner of the United States Court of Appeals for the Seventh Circuit, Professor Geoffrey Stone, dean of the University of Chicago Law School, the assistant dean and director of graduate student affairs and two professors at the University of Chicago Law School and a physics professor at the University of Wisconsin-Madison. Those letters attested to the high level of Ms. Altshuler's academic achievements during her studies at Tel Aviv University and at the University of Chicago, some of them noting the common law character of the Israeli legal system. Ms. Altshuler

4

also provided the Board with a copy of the letter from the New York State Board of Bar Examiners informing her that, on the basis of the transcript of her LL.B. studies at Tel Aviv University, it found her eligible to write the New York bar examination.

On July 11, 1992 the Board issued its decision declining to waive the ABA-approved law school degree requirement, restating its earlier conclusion that Ms. Altshuler's case was not exceptional nor was good cause shown for waiver.

In this review, Ms. Altshuler argued that the Board abused its discretion in refusing to grant a waiver. She contended that the Board's findings of fact did not address all of the matters concerning which she had provided information. Specifically, she asserted, the Board's decision did not mention facts demonstrating her high academic achievement during her law studies in Tel Aviv and did not mention her admission to the bar in Israel and her practice there as an attorney or her work at the University of Chicago, where she performs research and writing in the area of commercial law. She noted the Board's failure to address the content of the letters of recommendation she had provided and alleged that the omission constituted a rejection of those letters of recommendation and the matters set forth in them. Ms. Altshuler took the position that, because it did not rely on her entire file, the Board's conclusion that she had not shown good cause for waiver was erroneous.

Asserting the exceptional nature of her case, Ms. Altshuler noted that, unlike most American law schools that are not approved by the ABA, the lack of ABA approval of the Tel Aviv Law School does not constitute a denial of that approval, as Tel Aviv University neither sought nor was eligible for ABA approval. She insisted that her legal education and training was more than

5

essentially equivalent to the first professional degree conferred by an ABA-approved law school and thus asserted that she has complied with the spirit of SCR 40.04(1).

Finally, Ms. Altshuler argued that permitting her to write the Wisconsin bar examination would not subvert the purpose of the bar admission rules—to protect the public from incompetent lawyers. If denied waiver, however, she stated she would have to leave Wisconsin for another state that would permit her to practice, with the result that her husband would leave Wisconsin as well, thereby depriving the state of a highly accomplished physics professor. Addressing the alternative available to her to become eligible to write the bar examination, Ms. Altshuler termed spending two years of study to earn a J.D. degree at the University of Wisconsin Law School a "great financial sacrifice" that would serve no reasonable purpose.

In its brief, the Board took the position that Ms. Altshuler's LL.M. degree is not an acceptable substitute for a first professional degree in law. In support of that position, it cited the policy of the ABA Council of the Section of Legal Education and Admissions to the Bar: "It is the Council's position that no graduate degree in law is or should be a substitute for the professional degree in law (J.D.) and should not serve as the same basis as the J.D. degree does for bar admission purposes." The Board asserted that its decision declining to waive SCR 40.04(1) in this case was reasonable, as was its conclusion that Ms. Altshuler's case is not exceptional.

The Board opposed Ms. Altshuler's contention that it had not considered her entire file merely because it did not address in its decision each matter contained in her file. It also countered her allegation that failure to men-

tion the letters submitted on her behalf constituted a rejection of them. The Board stated that the entire record had been provided to its members and was considered in its entirety prior to reaching the decision.

The Board took the position that it is not feasible that it evaluate the quality of the law school education provided by a law school located in Israel or, for that matter, in any foreign country. Further, the Board opposed Ms. Altshuler's suggestion that permission to write the Wisconsin bar examination should be granted to any applicant who has graduated from a law school in a country whose legal system is based, as ours is, upon the common law.

Upon consideration of the record and the briefs of the parties in this review, it appeared to the court that in reaching its decision the Board might not have exercised the discretion given to it by SCR 40.04(1) to waive the law degree requirement in respect to Ms. Altshuler. Accordingly, the court remanded the matter to the Board for the exercise of that discretion, explicitly directing the Board to set forth the reasons for its decision in the exercise of that discretion.

Responding to that order, the Board set forth at length its consideration of the several issues presented by Ms. Altshuler in her application, including the quality of the graduate law program she pursued at the University of Chicago and the letters she had provided in support of her application.[3] Observing that the graduate law program apparently consisted of an introduction to American law for foreign lawyers, the Board suggested that, had the University of Chicago believed a student completing that program was sufficiently trained in

---

[3] A copy of the Board's response to the court's order is attached to this opinion.

7

American law, it could have conferred on Ms. Altshuler an accelerated J.D. degree but did not do so.

In reviewing a trial court's discretionary decision, we determine whether it was demonstrably made and based upon the facts appearing in the record and in reliance on the appropriate and applicable law. "Additionally, and most importantly, a discretionary determination must be the product of a rational mental process by which the facts of record and law relied upon are stated and are considered together for the purpose of achieving a reasoned and reasonable determination." *Hartung v. Hartung*, 102 Wis. 2d 58, 66, 306 N.W.2d 16 (1981).

This standard of review of discretionary determinations of a trial court applies equally to a decision of an administrative agency or, as here, the supreme court's board administering the court's bar admission rules. Pursuant to that standard, we will sustain the discretionary decision of the Board, absent an abuse of its discretion, even if, on the record and the law, we might may have reached a contrary decision. "It is recognized that a trial court in an exercise of its discretion may reasonably reach a conclusion which another judge or another court may not reach, but it must be a decision which a reasonable judge or court could arrive at by the consideration of the relevant law, the facts, and a process of logical reasoning." *Hartung, supra,* 66.

Having considered the Board's statement of the basis of the exercise of its discretion and Ms. Altshuler's reply to it, the court is satisfied that the Board properly reached its decision declining to waive the law degree requirement in this case.

8

IT IS ORDERED that the decision of the Board of Bar Examiners declining to waive the requirement of SCR 40.04(1) in respect to the application of Yotvat Adi Altshuler for admission to the practice of law in Wisconsin on bar examination is affirmed.

WILCOX, J., took no part.

## APPENDIX—DECISION ON REMAND

By its Order dated May 19, 1992, the Court has returned the matter of the bar admission of Yotvat Adi Altshuler to the Board of Bar Examiners for the sole purpose of determining whether, in determining not to waive the requirement of SCR 40.04(1) with respect to the petitioner, the Board properly exercised the discretion it has under SCR 40.04(1). By this decision, the Board wishes to advise the Court as to its exercise of discretion in this matter.

The Board subjected the petitioner's application to thorough consideration at two regular Board meetings. The first meeting was held on May 16-17, 1991, and the second, on July 11, 1991. On both occasions the Board considered materials that were submitted by the petitioner, which were duplicated and distributed to each Board member. The deliberations were specific to the application before the Board, and incorporated both attention to the petitioner's facts and to the placement of the particular application within the overall licensing framework with which the Board is familiar.

The Board exercised its discretion under SCR 40.04(1) in making its decisions at the May and July 1991 Board meetings. Through that exercise, it weighed several factors before concluding that the facts as presented by the petitioner did not warrant a waiver. An explanation of those factors is as follows:

9

1. The applicant did not receive a legal education that can be equated with the seven-year curriculum that is ordinarily required of graduates of accredited American Law Schools. The Board could not conclude that the Israeli legal educational system should be equated with the American, nor did the Board believe that an applicant's characterization of his or her system should play a controlling role. It appeared to the Board as though the Israeli system followed the European or English model, which places a legal education at the undergraduate level. Some foreign-trained lawyers assert that this is because the secondary schooling received overseas can be equated with an American college education. In any event, the Board could not conclude, based on the material furnished by the petitioner, that her legal education was sufficient to exempt her from the requirement that is otherwise imposed on all other applicants under a reasonable Supreme Court Rule that has been designed to assure that holders of law licenses in this state have received a fundamental education in the American legal system in addition to passing a test. As there is a strong public interest at stake, the Board looked at the petitioner's materials carefully to determine if the rule should be set aside, and then determined it should not.

2. The Board also weighed the impact of the fact that the petitioner was in the process of completing one year of a J.D. curriculum that was administered by the University of Chicago as an LL.M. program designed as an introduction to the American legal system for foreign-trained lawyers. The material before the Board in the form of transcripts from the University of Chicago indicated that the segment of law covered by the petitioner's LL.M. degree was

10

fairly narrow: the applicant was eventually awarded her degree based on 28 quarter hours in the following subject areas: corporations, banking, taxation, securities, negotiation, law and literature, and secured transactions. While the applicant must have demonstrated promise for the University of Chicago to have admitted her to its program, the curriculum that comprised her particular introduction to American law is lacking in subject areas that the Board believes are properly part of the contemporary law school curriculum and critical to the preparation of lawyers: she was not educated, as part of her LL.M. program, in civil procedure, constitutional law, contracts, criminal law, evidence, family law, professional responsibility, property, torts, and trusts and estates. These are subjects of such importance that the Board has selected its scope of coverage of the Wisconsin Bar Examination to include all of them. The Board believes that law school courses in these subjects generally form the appropriate antecedents to the bar examination.

3. The applicant presented testimonials as to her qualities as a person and as a student. The Board accorded these statements great weight; however, the Board has, over time, observed that favorable testimonials are the norm, not the exception, in matters relating to waiver of the accredited J.D. requirement. Further, the testimonials offered in support of the petitioner seemed to address her character and promise rather than the substantive content of her training, which the Board believed to be the overriding issue. In this matter, the Board was faced with deciding whether the strength of the petitioner's application and request for waiver, including her supporting materials, could overcome her lack of an

essential educational credential. After carefully weighing the question, the Board decided it could not.

4. The Board also considered the necessity of using its discretion in a manner that is understandable and fair to those applicants with similar fact patterns who have preceded and who will most certainly follow the petitioner, given the volume of inquiries that the Board receives and the increasing globalization of the practice of law.

Knowing that LL.M. programs are not the subject of any qualitative standards (the American Bar Association Standards reach only the quality of J.D. programs, a fact little-known outside the law school community), the Board recognized that it would be compelled to undertake, as to each LL.M. program, its own qualitative review. The Board doubts the wisdom of undertaking such a school-by-school review of LL.M. curricula because of the allocation of resources that would be required. Further, and as to the petitioner, the Board did evaluate her particular LL.M. program, which consisted of a 28-quarter-hour assortment of J.D. courses in a one-year program designed for the purpose of introducing foreign-trained lawyers to American law. (If the University of Chicago felt that a student completing this year was sufficiently grounded in American law for a J.D. degree, the school might have pursued the matter of conferring an accelerated J.D. in her case.)

In addition, the Board considered the mammoth and unreasonable assignment of making qualitative judgments about the legal systems and the legal educational systems of other countries for all similar applicants.

Further, the Board considered that American law schools, with better resources to evaluate foreign educational credentials, are already empowered under existing accreditation standards to grant the J.D. degree on an accelerated basis to worthy students. This access mitigates the adverse impact on foreign-trained lawyers who locate in the United States.

Finally, it was difficult for the Board to sustain a decision to excuse the petitioner from the educational requirement that bars graduates of unaccredited American law schools from the examination in view of the fact that the petitioner's exposure to the essential American legal curriculum has been far more limited in scope and abbreviated in time.

At the direction of the Court, the Board has revisited this matter and has articulated its reasoning as set forth above.

The Board acknowledges that it has the discretion to waive SCR 40.04(1) and assures the Court that it exercised its discretion with regard to the petitioner. The Board believes its exercise of discretion was reasonable under the facts that were before it. The Board regrets that it failed to satisfy the Court on the point of its recognition and exercise of discretion in this matter.

Dated this 29th day of May, 1992.

SUPREME COURT OF WISCONSIN
Board of Bar Examiners
By /s/ Erica Moeser

———

Erica Moeser
Director

SHIRLEY S. ABRAHAMSON, J. *(dissenting)*. Ms. Altshuler asks the court for permission to take the Wis-

consin bar examination. I would allow her the opportunity to do so.

The court and the Board of Bar Examiners conclude that Ms. Altshuler may not take the bar examination because she does not have a first professional degree in law (an LL.B or a J.D.) from a law school approved by the American Bar Association (ABA). Such a professional degree satisfies the legal competence requirement for bar admission. Ms. Altshuler does hold a law degree from Tel Aviv University Law School, Tel Aviv, Israel. The ABA, however, approves only law schools located in the United States.

While the Supreme Court Rules specify that certain requirements cannot be waived, the Supreme Court Rules allow waiver of most bar admission rules, including the requirement of a first professional degree from an ABA-approved law school. Waiver may be granted "in exceptional cases and for good cause where to do otherwise would be unjust." SCR 40.10.[1] I conclude that Ms. Altshuler has presented an exceptional case and good cause and that denying her access to the bar examination is unjust.

I.

The first issue is this court's standard of review for evaluating the Board's exercise of its discretionary authority to waive a rule. In this case, the court analogizes the Board to a trial court and a legislatively-created administrative agency and examines whether the Board has "abused its discretion." Other cases demonstrate (1)

---

[1] SCR 40.10. **Waiver of requirements.** Except for the requirements of SCR 40.03 [diploma privilege; legal studies] and 40.06 (2) [diploma privilege; good moral character], the Board may waive any of the requirements of this chapter in exceptional cases and for good cause where to do otherwise would be unjust.

14

that the court does not treat the Board as either a trial court or an administrative agency in resolving challenges to the Board's decisions and (2) that the court reviews the Board's decisions *de novo* and exercises its own discretion in determining whether a requirement should be waived under SCR 40.10.

The most recent case to come to the court from the Board, *In the Matter of the Bar Admission of David B. Wescoe,* 165 Wis. 2d 738, 741–742, 478 N.W.2d 841 (1992), provides a good example. In *Wescoe* the applicant contended before the Board that he satisfied the bar admission requirement for practice in another state. He also argued that if he did not satisfy the requirement, the Board should waive the requirement under SCR 40.10, the waiver rule relevant in the case at bar. The Board concluded that Mr. Wescoe did not satisfy the practice requirement and that "this is not a case warranting waiver under SCR 40.10." *Id.* at 742. The court reviewed the Board's exercise of its discretion as follows: "We disagree . . .. We determine that, under the facts and circumstances present in this case, waiver of the durational practice requirement . . . is warranted . . .." *Id.* Thus the court did not review the Board's exercise of discretion under the abuse of discretion standard. Instead the court properly made an independent review of the case and exercised its own discretion in determining whether a waiver was justified.[2]

---

[2]The court has not applied the standard of review it applies to trial courts and administrative agencies in other reviews of Board decisions. When the court has had to determine whether the Board applied a rule (a legal standard) properly to the facts, an issue generally viewed in administrative law as a mixed question of law and fact to which deference to the agency may be owed, the court has determined whether the Board's decision is correct by examining the issues *de novo* (without any deference to

Analogizing the court's review of a Board decision to the court's review of a trial court or administrative agency decision establishes a standard that is much too restrictive considering the subject matter of the Board's jurisdiction. In this case involving regulation of bar admission, unlike in cases involving review of decisions

the Board). *See, e.g., In the Matter of the Bar Admission of Raymond Crowe,* 141 Wis. 2d 230, 414 N.W.2d 41 (1987); *In the Matter of the Bar Admission of James W. Dirks,* 143 Wis. 2d 740, 422 N.W.2d 857 (1988); *In the Matter of the Bar Admission of Fred Ellis Horton,* 158 Wis. 2d 428, 462 N.W.2d 661 (1990); *In the Matter of the Bar Admission of David B. Wescoe,* 165 Wis. 2d 738, 478 N.W.2d 841 (1992).

The court has also exercised its own discretion when reviewing the Board's exercise of discretion to deny certification on character and fitness grounds. *In the Matter of the Bar Admission of Lauri Jean Gaylord,* 155 Wis. 2d 816, 827, 456 N.W.2d 590 (1990). In *Gaylord,* the court reviewed the one-year requirement of SCR 40.09 without submitting the question to the Board, even though SCR 40.10 grants the Board discretion to waive the one-year requirement. *Gaylord,* 155 Wis. 2d at 829.

In contrast to these cases evidencing the court's *de novo* determination of the correctness of the Board's decision, the court stated in one case that it reviewed the facts found by the Board under the clearly erroneous standard. *In the Matter of the Bar Admission of Raymond Crowe,* 141 Wis. 2d 230, 232, 414 N.W.2d 41 (1987). In a later case, however, the court reversed a Board decision because the court found that the inference the applicant urged the Board to draw from submitted documents, and which the Board refused to draw, was reasonable. The court did not conclude that the inference the Board made was unreasonable. Instead the court exercised its power to draw its own factual inferences from the documents, expressly recognizing that the Board may feel more constrained than the court in making determinations under the rules. *In the Matter of the Bar Admission of Fred Ellis Horton,* 158 Wis. 2d 428, 435, 462 N.W.2d 661 (1990).

of trial courts or administrative agencies, the court is asserting its inherent and exclusive jurisdiction over admission to the bar.[3]

This court has recognized the special nature of its powers and responsibilities regarding the admission of lawyers. The court has further acknowledged that the Board, as an agent of the court, may feel more constrained than the court might in interpreting the court's rules and deciding to waive them. For example, in *In the Matter of the Bar Admission of Fred Ellis Horton*, 158 Wis. 2d 428, 462 N.W.2d 661 (1990), the court made its own factual inferences from the records, inferences the Board rejected. Although the court will not ordinarily repudiate inferences reasonably drawn by a trial court or administrative agency and substitute its own, the court explained its rationale for drawing inferences (which the Board did not adopt), by stating that the Board might feel more "constrained" than the court in deciding whether to admit an applicant. *Id.* at 435.

This court has promulgated the rules for bar admission and has delegated to the Board the power to make determinations regarding applicants. For that reason I believe that this court should rely to a substantial extent on the efforts of the members of the Board and on their accumulated knowledge and experience in interpreting and applying our rules. We should come to a conclusion which differs from the Board's recommendation with reluctance and only after careful consideration.

Nonetheless, the ultimate determination of admission belongs to the supreme court, and I believe this court should make its own assessment of each case to

---

[3]For a discussion of legislative powers to prescribe qualifications for admission to the practice of law, see *State ex rel. Fiedler v. Wisconsin Senate*, 155 Wis. 2d 94, 101, 454 N.W.2d 770 (1990).

determine if a rule we have adopted should be waived.[4] Our prior cases support this standard of review.

I thus conclude that the majority applies an erroneous standard of review. I believe that the court should give careful consideration and substantial weight to the Board's decision, but exercise its own discretion in determining whether to waive a requirement under its rules. My view of the standard of review is especially applicable to this case in which no hearing was held and in which the Board relied on the same documentary record that is now before the court.

I hasten to add, however, that regardless of which standard of review I apply in this case, I reach the same conclusion. Ms. Altshuler should be given an opportunity to sit for the bar examination.

## II.

The Board contends that it has exercised its discretionary authority in this case. As I read the Board's Decision on Remand, which explains in greater detail its decision dated August 29, 1991,[5] the Board has not conducted a meaningful inquiry into this applicant's qualifications and into the justification for a waiver. Rather, in denying Ms. Altshuler's petition on the grounds the Board sets forth, the Board is really deciding that it cannot and will not evaluate foreign law schools, LL.M.

[4]For the adoption of a similar standard of review see *In re Zbiegien,* 433 N.W.2d 871, 874 (Minn. 1988), quoted with approval *Dolan v. State Board of Law Examiners,* 483 N.W.2d 64, 66 (Minn. 1992).

[5]The May 29, 1992 Decision on Remand is an explanation by the Director of the Board of the Board's deliberations of May 16-17, 1991, and July 11, 1991, which culminated in a decision dated August 29, 1991. The Board apparently did not further consider the matter after July 11, 1991.

degrees from American law schools, or the individual legal qualifications and intellectual qualities of applicants who are educated abroad. Thus I conclude there has been abuse of discretion.

The Board ultimately bases its decision on "the mammoth and unreasonable assignment of making qualitative judgments about the legal systems and the legal educational systems of other countries for all similar applicants" (Decision on Remand at 12), and the possibility that its evaluation of a foreign program could make Wisconsin a "lightning rod" for applicants from other countries. Brief, pp. 7-9. The Board finds that "it is not feasible for the Board to meaningfully evaluate the Israeli educational system to determine what equivalencies in post-secondary training may exist and to assess the content and quality of a law school located in Israel." Findings of Fact, August 29, 1991, No. 6.

While I acknowledge that the evaluation of overseas law schools would not be an easy task, many other states have developed procedures for evaluating the credentials of foreign-trained candidates (see note 7). Furthermore, the Board is asked to consider only this applicant, and an evaluation in this case would not have been onerous since credible sources have recognized the equivalency of Ms. Altshuler's education. I conclude that the Board's position on evaluating foreign law schools amounts to a categorical refusal to evaluate Ms. Altshuler or any other applicant trained outside the United States.

In its comments upon Ms. Altshuler's LL.M. program, the Board implies that her completion of different coursework might have resulted in a different decision. However, the Board also explains that it would be too difficult a task to evaluate all American LL.M. programs (Decision on Remand at 12) and simply concludes that

19

"[a]n LL.M. degree is not an acceptable substitute for a first professional degree in law." Findings of Fact, No. 8.

Again, while evaluating an applicant's LL.M. training might be difficult, I do not believe it would have been unduly burdensome in this case. According to the record, which I explore more fully later, Ms. Altshuler's master's program consisted of standard J.D. classes taken at the University of Chicago Law School, a law program approved by the ABA.

In denying Ms. Altshuler's petition, the Board relies heavily on the criteria suggested by the ABA Section on Legal Education and Bar Admission.[6] The council of that Section plays a major role in approving American law schools. Having been a member of the council of the Section for approximately 10 years, I have a high regard for its work and for its members. I believe, however, that its rules keeping foreign-trained individuals from access to state bar examinations are too narrow and rigid; they are not suited to the global economy in which we now live. In recognition of the rules' deficiencies, a number of states that generally require an ABA-approved legal education have made exceptions, allowing certain qualified foreign-trained law graduates to sit for their state bar examinations.[7] The Board cannot substitute ABA poli-

---

[6]In its Findings of Fact (No. 7), the Board states that in adhering to SCR 40.04(1) the Board relies on the ABA as the accrediting agency. In its Findings of Fact (No. 8), the Board relies on Policy 23 of the Adopted Policies of Statement and Procedure of the ABA Council of the Section of Legal Education and Admissions to the Bar which states that a graduate degree in law should not be a substitute for the J.D. for bar admission purposes.

[7]Fifteen states have rules specifically providing for admission of graduates of foreign law schools. Of the other 35 states, four states have admitted graduates of foreign law schools to take the

cies and standards for a case-by-case exercise of its discretion under the Supreme Court rules.

Although the Board states that it is exercising its discretion in denying Ms. Altshuler's petition, the Board has in reality set forth and is enforcing a rigid, inflexible rule, namely that no applicant can sit for the Wisconsin bar examination without getting a first professional law degree from an ABA-approved law school in the United States. Thus the Board's "exercise of discretion" must always result in its declining to grant a waiver of the ABA-approved law school degree requirement of SCR 40.04(1).

If this court had intended to establish such an iron-clad rule, it would not have authorized the Board to waive the degree requirement.

I believe that the Board's decision in this case amounts to a failure to conduct an individualized assessment and a refusal to grant a waiver of the ABA-approved degree requirement to any foreign-trained lawyer. Statements in the Decision on Remand referring to the applicant's educational experiences are incomplete. I believe that only one reasonable conclusion is possible

---

bar examination without requiring additional legal education in the United States. In six additional states, a foreign law school graduate who has a graduate law degree from an ABA-approved law school is eligible to take the bar examination although no rules expressly provide for admission of foreign-educated lawyers. See American Bar Association Section of Legal Education and Admissions to the Bar and National Conference of Bar Examiners, *Comprehensive Guide to Bar Admission Requirements: 1991–92* (1991), at Chart VII, pp. 26–30. See also, *e.g.,* American Bar Association Section of International Law and Practice, *The Regulation of Foreign Lawyers* (3d ed. 1984); Daniel C. Turack, *Access to the State Bar Examination for Foreign Trained Graduates: The Ohio Experience,* 8 Ohio N.U.L. Rev. 265 (1981).

from this record: Ms. Altshuler has presented an exceptional case and good cause and denying her access to the bar examination is unjust. If Ms. Altshuler is denied admission to the Wisconsin bar examination, I do not see how any graduate of a law school located outside this country can be found eligible. Accordingly I conclude that the Board's decision constitutes an abuse of discretion.

## III.

My decision that the only reasonable conclusion is that Ms. Altshuler should be permitted to sit for the Wisconsin bar examination is based on the following facts and rationale.

1. *Ms. Altshuler, a graduate of Tel Aviv University Law School with an outstanding academic record, has demonstrated that she has received "a fundamental education in the American legal system" (Decision on Remand at 10) that qualifies her to sit for the Wisconsin bar examination.*

As the record before the Board and the court demonstrates, many similarities exist between Israeli and American law, both of which are based on the English common law system. Furthermore, Israeli courts have been guided by Anglo-American precedent and Israeli statutes are often based on American laws.

The applicant's transcript from the Tel Aviv University Law School shows that she took courses comparable to those taken by first and second-year law students in the United States, namely contracts, torts, property, administrative law, criminal law, criminal procedure, constitutional law, civil procedure, corporation law, international law, labor law, taxation, evidence,

negotiable instruments, and ethics.[8] Many members of the Tel Aviv University Law School faculty have been trained in the United States; they publish in both Israeli and American law journals. In addition, American law professors teach at the Tel Aviv University Law School.

The value of an Israeli legal education as preparation for practice in the United States has been recognized by the state of New York, which, according to the record before us, has granted Ms. Altshuler permission to sit for that state's bar examination. Letter from the New York State Board of Law Examiners, June 12, 1990. Under New York rules, a foreign-trained applicant will not be given permission to sit for the bar examination unless 1) the foreign country in which the applicant was trained is one whose jurisprudence is based upon the principles of English common law, and 2) the program and course of the applicant's law study is the substantial equivalent of the legal education provided by an ABA-approved law school in the United States.[9] Thus the state of New York has determined that Ms. Altshuler's legal education is substantially equivalent to the legal education provided by an ABA-approved American law school.

In explaining its denial of Ms. Altshuler's application, the Board states that it does not believe "an applicant's characterization of his or her system should play a controlling role." Decision on Remand at 10. But the record shows that the applicant does not ask the Board

---

[8]The applicant excelled in her studies. She ranked ninth in a class of 134 and was a member of the editorial board of the Tel Aviv University Law Review.

[9]American Bar Association Section of Legal Education and Admissions to the Bar and National Conference of Bar Examiners, *Comprehensive Guide to Bar Admission Requirements: 1991-92* (1991), at Chart VII, pp. 26–30.

to rely on *her* evaluation of the Israeli and American legal systems. Her claim of equivalency is supported in the record by the evaluations of several knowledgeable legal professionals: Roberta G. Evans, Director, Graduate Student Affairs, University of Chicago Law School;[10] Judge Richard Posner of the Seventh Circuit United States Court of Appeals;[11] and Dr. Joshua Rosensweig, an Israeli lawyer and law teacher trained in American

---

[10]Director Evans's affidavit states in part:

2. My position as Director, Graduate Student Affairs, requires me to evaluate the transcripts and other credentials of all applicants to the Master of Laws (LL.M) program at the University of Chicago Law School;

3. I have been in the position since 1984, and have examined approximately 350 applications each year from students educated in about 40 different countries;

4. This experience, coupled with the evaluation of the subsequent performance of admitted students, has enabled me to develop some familiarity with the educational standards and curricula in various law schools in the various countries, including Israel;

5. Tel Aviv University, where Ms. Altshuler obtained her first degree in law, is well recognized as one of the outstanding Israeli law schools, the graduates of which are as well trained in the common law as graduates of the best ABA approved law schools in the United States;

6. *The curriculum of Tel Aviv University Law School is, in regard to the common law subjects taught in the United States, comparable in content and of an educational standard which is as high or higher as that in the best American law schools; . . . .* (Emphasis added.)

[11]Judge Posner's letter says in part:

I am also generally familiar with Israeli education. . . . She could not have gotten the high grades she did . . . [at the University of Chicago Law School] without a solid grasp of the principles of Anglo-American law. . . . In fact the Israeli legal system is basically English, and in consequence lawyers trained in Israel can make an easy transition to U.S. law. Ms. Altshuler has made the transition triumphantly.

24

law and working with American law firms.[12] Each states that the two legal systems are similar, as are the two systems of legal education, and that a lawyer trained under one system can easily make a transition to the other.

Furthermore, faculty members of the University of Chicago Law School state that, based on her performance at the University of Chicago in third-year law school classes, Ms. Altshuler's knowledge of the American legal system is equivalent to that of the law school's third-year J.D. students. Professor Miller and other faculty members, including the dean of the law school, have submitted impressive letters and affidavits on her behalf. The Board states that it accorded these statements great weight but then substantially discounts them, saying that "favorable testimonials are the norm, not the exception" and that the letters seem to address *"her character and promise rather than the substantive*

---

[12]Dr. Rosensweig wrote the Board as follows:

I am an attorney, qualified and practicing in Israel for some twelve years, and a lecturer at the faculty of law of Bar Ilan University. I also hold the degree of Doctor of Juridical Science (in Taxation) awarded by New York University. My master and doctoral studies in New York, as well as my lecturing here, my practice in international commercial law and my working with U.S. firms such as Skadden Arps and Cleary, Gottlieb Steen and Hamilton qualify me, I believe, to state that Yotvat Adi Altshuler lacks nothing of the underpinnings of the legal education required from persons seeking to practice law in Wisconsin.

The legal system of the State of Israel (and therefore that taught in its law schools) is based largely on the legacy of the British Mandatory period and is thus a common law system. Furthermore Israeli courts have been guided by Anglo-American precedent and statutory development committees look to the U.S. for legislative modeling and guidance, particularly in the field of commercial law.

Thus the legal education . . . corresponds, in my opinion, to that received by most U.S. attorneys and qualifies her eminently, in my mind, as a candidate for the Wisconsin Bar . . ..

*content of her training.*" Decision on Remand at 11. (Emphasis added.)

The Board's summary of this part of the record is incomplete and conflicts with its prior characterization of the "testimonials." In its Findings of Fact the Board states that the "applicant presented several written testimonials as to her *education, experience, and abilities* to the Board." Findings of Fact, No. 5. (Emphasis added.) I believe that this finding correctly characterizes the "testimonials." The statements submitted attest to the nature of the applicant's legal education and legal experience in Israel and in the United States, her ability to work with American legal material, her familiarity with the American legal system and American law, her intellectual capacity, and her good moral character. I can say from my experience that these statements are not the perfunctory or run-of-the-mill letters of recommendation often received. The statements provide convincing support for the conclusion that Ms. Altshuler presents an exceptional case and good cause. I have set forth excerpts from the recommendations at the end of this dissenting opinion.

The Board states that it "cannot conclude on the basis of the material furnished" that the applicant's legal education was sufficient to exempt her from "a reasonable Supreme Court Rule that has been designed to assure that holders of law licenses in this state have received a fundamental education in the American legal system in addition to passing a test." Decision on Remand at 10. The Board's reluctance and constraint in straying too far from the rule's formal requirements is understandable, but the Board does not address the opinions of experts appearing in the record or the favorable determination arrived at by the state of New York. Moreover the Board has not asked the applicant

26

to provide additional information, nor does the Board state what information would enable it to reach a favorable conclusion.[13]

2. *In addition to her Israeli studies, Ms. Altshuler has demonstrated her "fundamental education in the American legal system" while earning an LL.M. degree from the University of Chicago Law School.*

According to the record, Ms. Altshuler was one of 25 international students admitted (out of 350 applicants) to the University of Chicago LL.M. program for the 1990–91 academic year. While enrolled she completed a year of representative third-year courses taken along with the University of Chicago's J.D. candidates. Her courses were predominantly in the area of commercial, corporate and business law and, according to the submissions from the faculty of the University of Chicago Law School (printed at the end of the opinion), represent some of the law school's most difficult and technical courses.[14] The University of Chicago faculty members further state that the applicant could not have done well

[13]Information about the similarities of the two legal systems is readily available from sources unrelated to the applicant. See, *e.g.,* Yoseph Edrey, *Income Tax Base: Moving from the British Source Doctrine to the "American Concept of Accretion of Wealth"—the Israeli Experience,* 3 Transnat'l Law. 427 (1990); Pnina Lahav, *American Influence on Israel's Jurisprudence of Free Speech,* 8 Hastings Const. L.Q. 21 (1981); Larry M. Roth, *Requirements for the American Lawyer to Practice in Israel,* 15 Int'l Lawyer 433 (1981); Haim H. Cohn, *An Introduction Into the Law of Israel,* 5 N.Y.L.F. 1 (1959); Louis A. Warsoff, *The Legal System of the State of Israel,* 2 N.Y.L.F. 379 (1956); Marcia Chambers, *Israeli Law often Looks to U.S. Courts,* Nat'l L.J. June 3, 1991, p.13 col 3.

[14]Her courses included Corporation Law, Banking Law, Introduction to Tax Policy, Corporate Income Tax, Federal Regulation of Securities, Lawyer as Negotiator, Comparative Japa-

in her LL.M. courses without a thorough grounding in American law.

Ms. Altshuler's performance was graded on the same basis as that of the J.D. candidates with whom she took these courses. Her grades placed her in the upper 15–25 percent of a typical graduating J.D. class at the University of Chicago. Thus Ms. Altshuler has completed—with excellent academic credentials—approximately one year of the three-year standard American legal education at one of this country's leading law schools.

In ruling against Ms. Altshuler, the Board contends that her work at the University of Chicago Law School is too narrow because she has not taken other courses covered in the bar examination. Decision on Remand at 10–11. I am not persuaded by this reasoning. First, the applicant completed many of these courses in Israel. Second, the rules do not set forth any course requirements to sit for the Wisconsin bar examination. Graduates of ABA-approved American law schools are admitted to the Wisconsin bar examination without review of their course of study. Under the circumstances of this case, the only reasonable process is to rely on the fact that if Ms. Altshuler has not mastered the subject matter of these courses she will not pass the bar examination.

3. *In addition to her legal education in Israel and in the United States, Ms. Altshuler has had practical legal experience in Israel and in the United States.* The applicant has had 18 months of supervised legal apprenticeship training in Israel, including a year clerking for the Israeli supreme court. After passing the Israeli bar examination, she has engaged in the practice of law in Israel. Dr. Rosensweig (note 12) with whom the appli-

---

nese and U.S. Business Law, Advanced Corporations, Law and Literature, and Commercial Law: Secured Transactions.

cant practiced law, wrote that she is "an extremely competent attorney," and "while in my employ, Ms. Altshuler worked on complex and intricate matters in files connected with share issues in the U.S. . . .."

In the United States, Ms. Altshuler has had analytical and research experience in American law outside the University of Chicago classrooms. Among other things she has been a legal research assistant to Professor Geoffrey Miller of the University of Chicago Law School. Professor Miller comments that the applicant has "fine research skills in American Legal Materials" and sound judgment and intuition on substantive American Law. See Professor Miller's affidavit at end of opinion.

These are all legal experiences demonstrating the applicant's competence to sit for the Wisconsin bar examination. Yet the Board gives no indication that it has considered these factors.

## IV.

In summary, it is clear from the record that based on her education in Israel and in the United States and on her legal experiences, Ms. Altshuler has excellent legal skills and an excellent grounding in American law. In my opinion the record conclusively demonstrates that Ms. Altshuler has received a "fundamental education in the American legal system" entitling her to sit for the bar examination.

Judge Richard A. Posner of the Seventh Circuit United States Court of Appeals, a former Professor of Law at the University of Chicago who now teaches there part-time, had Ms. Altshuler as a student in 1990-91. On the basis of Judge Posner's familiarity with the work of American law students and Wisconsin lawyers who practice in the court in which he sits, Judge Posner advises

the Board that Ms. Altshuler is "extraordinarily quali-
fied to practice law in any U.S. jurisdiction; . . . [she] has
made the transition [from Israeli to U.S. law] trium-
phantly." He wisely urges us, a "great nation of immi-
grants," not to "strew artificial obstacles in the path of
foreign professionals." I quote Judge Posner's persuasive
letter in full:

> I am writing on behalf of Yotvat Adi Altshuler,
> who I understand has requested reconsideration of
> your board's proposed decision not to waive the
> requirement of a first professional degree from an
> ABA accredited law school. Ms. Altshuler was a stu-
> dent of mine (I teach part-time at the University of
> Chicago Law School) this past quarter in a course
> that I teach on Law and Literature. I am also gener-
> ally familiar with Israeli legal education, and of
> course with the courses that she took at the U. of C.
> Law School this past year from my colleagues.
>
> Ms. Altshuler is extraordinarily qualified to
> practice law in any U.S. jurisdiction. The paper she
> did for me in the Law and Literature course—a paper
> on the jurisprudential implications of Bulgakov's
> famous novel, *The Master and Margarita*—was sim-
> ply superb, and I gave it an A+. Of course Law and
> Literature is not a central course in the professional
> curriculum, but what the paper showed was not only
> a sure sense for the fundamental principles of legal
> justice but also a mastery of English that surpasses
> that of many of our American-born students. Her
> spoken English is also excellent.
>
> More important are the other courses. She could
> not have gotten the high grades she did in courses
> like corporations, corporate income tax, and securi-
> ties regulation without a solid grasp of the principles
> of Anglo-American law. That is, you couldn't take an
> American college student and throw him into these
> courses without previous legal education and expect

30

him or her to pass. In fact the Israeli legal system is basically English, and in consequence lawyers trained in Israel can make an easy transition to U.S. law. Ms. Altshuler has made the transition triumphantly.

As a judge of the Seventh Circuit I of course read briefs and hear arguments of Wisconsin lawyers. I am impressed by the quality of your bar. I am confident that Ms. Altshuler would be a great credit to that bar despite her lack of a conventional American legal education. I am sure you agree that this great nation of immigrants should not strew artificial obstacles in the path of foreign professionals.

I hope therefore that you will give favorable consideration to Ms. Altshuler's request for reconsideration.

The purpose of the rules for the bar examination is to protect the public from dishonest or incompetent lawyers. Denying Ms. Altshuler access to the bar examination in Wisconsin will not fulfill this purpose. For the reasons set forth, I conclude that Ms. Altshuler should be given an opportunity to take the Wisconsin bar examination.

I am authorized to state that JUSTICE WILLIAM A. BABLITCH joins this dissent.

***

*Selected Excerpts from Material Submitted on Behalf of the Applicant*

1. Joseph Isenbergh, Professor of Law, University of Chicago Law School, submitted an affidavit stating:

Ms. Altshuler was a student of mine in two courses this past year at the University of Chicago Law School: a course in corporate income tax and a seminar in tax policy. Her performance in both was

fully commensurate with that of advanced law students who have covered most of the ground necessary for a J.D. degree . . .

Ms. Altshuler's overall performance in her L.L.M. year at the University of Chicago Law School put her in the top 20% of graduating students. In the L.L.M. program Ms. Altshuler took substantial and difficult courses, courses that normally are not approached by American law students until they have had considerable grounding in more basic legal subjects. It is extremely unlikely that a student could survive (let alone do well, as Ms. Altshuler did) without a grounding in the essentials fully comparable to that obtained by an American law student pursuing a J.D. degree in an ABA-accredited law school. This conclusion is confirmed by a glance at Ms. Altshuler's record at the Tel-Aviv University Faculty of Law, where her course of study was extensive in all fundamental branches of law.

2. Geoffrey P. Miller, Professor of Law, University of Chicago Law School, states in his affidavit as follows:

Ms. Altshuler was my student in the Banking Law course here at the University of Chicago Law School. She was an excellent student in all respects—diligent in class preparation, thoughtful in class comments, and well-liked and respected by her fellow students. Despite the fact that her legal training was in Israel, her knowledge of and sophistication in American legal principles as demonstrated in the class was fully equal to those of her American-born colleagues. Her English is flawless. She performed with distinction in the class and on her examination.

I understand that Ms. Altshuler also earned high marks—as well as the admiration and respect of her professors—in the other courses she took at the Law School. She selected some of the most difficult and technical courses offered here: corporations, corpo-

rate income tax, securities regulation, as well as banking law. She also was ambitious enough to take the course in law and literature from Judge Richard Posner of the United States Court of Appeals for the Seventh Circuit.

I was so impressed by Ms. Altshuler's abilities that I hired her as my summer research assistant this year. She is currently working in that capacity. She displays excellent.diligence and fine research skills in American legal materials. She also has shown excellent analytical skills. While some research assistants are useful only for such tasks as cite checking and searches for authority, I have found myself increasingly turning to Ms. Altshuler for her views on substantive legal points. Her judgment is invariably sound and her intuition excellent.

During the course of my professional career I have had the privilege of meeting many attorneys licensed to practice in the state of Wisconsin. I have been extremely impressed by their quality and their commitment to social justice and public service. Ms. Altshuler, in my opinion, would be a credit to this bar, for she is a person of great substance, considerable intelligence, and enormous integrity—as well as a superbly qualified lawyer.

Accordingly, I earnestly hope that you might give favorable consideration to Ms. Altshuler's request for reconsideration. I would be very happy to speak with any member of your committee further about this matter if you desire.

3. Professor Geoffrey R. Stone, Dean of the University of Chicago Law School, wrote as follows:

I am writing in support of Ms. Yotvat Adi Altshuler's petition for a waiver of the requirement that candidates for the bar examination hold a first professional degree in law from a law school approved by the American Bar Association. I can attest that Ms.

Altshuler's experience in the LL.M. program at the University of Chicago Law School was at the very highest level. The courses she took during her year here are representative of those taken by third-year students. Moreover, her performance in her courses was consistently strong. Her final average of 78.54 places her in the top 15% of the J.D. students. Moreover, the courses she took, such as Corporation Law, Banking Law, Corporate Income Tax, Commercial Law, Federal Regulation of Securities, and Advanced Corporations, all presume a sophisticated knowledge of the American legal system. That Ms. Altshuler did so well in these courses is powerful evidence that she has a solid grounding in that material and that she has the capacity to be an excellent attorney in the American legal system.